(Slip Opinion)

# Reconsidering State Procedures for Appointment of Competent Counsel in Postconviction Review of Capital Sentences

In 2009, relying on *Chevron*, this Office concluded that 28 U.S.C. § 2265(a)(1) permits the Attorney General to condition the availability of expedited habeas proceedings on a state's application of federal standards of competency for state postconviction counsel, including federal standards for adequate compensation. Having been asked to reconsider in view of the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, we now conclude that this is not the best reading of section 2265(a)(1).

February 18, 2026

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, authorizes expedited habeas procedures in certain postconviction proceedings involving state capital convictions. *See* 28 U.S.C. §§ 2261–2264, 2266. In 2009, relying heavily on the framework established in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45 (1984), this Office opined that section 2265(a)(1) permits the Attorney General to condition the availability of such expedited proceedings on a state's application of *federal* standards of competency for state postconviction counsel, including a federal standard for determining adequate compensation for counsel. *State Procedures for Appointment of Competent Counsel in Post-Conviction Review of Capital Sentences*, 33 Op. O.L.C. 402, 404 (2009) ("2009 Opinion"). You have asked whether we continue to adhere to that view after *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). We do not. Thus, we withdraw the 2009 Opinion. Nevertheless, due to ongoing administrative proceedings and litigation surrounding the meaning of the key statutory provision, we decline to definitively reach a conclusion about the best reading of section 2265(a)(1).

## I.

In 1996, Congress enacted AEDPA to curb the decades-long delay in executions resulting from federal habeas review. *See* Pub. L. No. 104-132, § 107, 110 Stat. 1214, 1221–26 (codified as amended at 28 U.S.C. §§ 2261–2266). Among other reforms, AEDPA provides definite time limits for concluding the adjudication of federal habeas petitions in

capital cases, *see, e.g.*, 28 U.S.C. § 2266, which otherwise can languish for years at the various stages of federal court adjudication and review, *see* Tracy L. Snell, Bureau of Just. Stat., *Capital Punishment, 2020 – Statistical Tables* at 17 (2021), https://bjs.ojp.gov/content/pub/pdf/cp20st.pdf [https://perma.cc/W3T9-J7YX] (indicating that, on average, the length of time a prisoner spent on death row increased by more than 50 percent between 1985 and 1996). For a state to avail itself of these definite time limits, the state must adopt mechanisms to appoint, compensate, and pay reasonable litigation expenses for competent counsel to represent indigent prisoners under a sentence of death in state postconviction proceedings in capital cases. 28 U.S.C. § 2265.

A decade later, in 2006, Congress concluded that federal courts were still giving insufficient weight to state counsel-appointment mechanisms in capital cases. *See* 152 Cong. Rec. 2440–41, 2445–46 (2006) (remarks of Sen. Jon Kyl); 151 Cong. Rec. E2639–40 (2005) (remarks of Rep. Jeff Flake). To address this problem, Congress reassigned the task of determining whether a state has complied with AEDPA's requirements from federal courts, which had assumed that function, to the Attorney General. Amended section 2265(a) requires that the Attorney General "promulgate regulations to implement the certification procedures"; and forbids her from imposing substantive "requirements for certification . . . other than those expressly stated in this chapter." USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 507(c), 120 Stat. 192, 250 (2006) (codified at 28 U.S.C. § 2265(a)(3), (b)). In amending the statute, Congress eschewed alternative procedures, such as the establishment of a federal competency standard that the Judicial Conference of the United States had previously urged. *See* Certification Process for State Capital Counsel Systems, 73 Fed. Reg. 75,327, 75,331 (Dec. 11, 2008) (citing 135 Cong. Rec. 24694–98 (1989)).

As a result of these amendments, a state is currently eligible for AEDPA's expedited procedures if the Attorney General certifies that the state "has established a mechanism for providing counsel in postconviction proceedings as provided in section 2265" and, with certain exceptions not relevant here, counsel was in fact "appointed pursuant to that mechanism." 28 U.S.C. § 2261(b). To certify a state under section 2265(a)(1), the Attorney General must determine "whether the State has established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconvic-

tion proceedings brought by indigent prisoners who have been sentenced to death." *Id.* § 2265(a)(1)(A). She also must determine "whether the State provides standards of competency for the appointment of counsel in proceedings described in subparagraph (A)." *Id.* § 2265(a)(1)(C).

## II.

Despite the text of section 2265, this Office in 2009 opined that section 2265(a)(1) permits the Attorney General to promulgate federal standards of competency for state postconviction counsel, including a federal standard for determining adequate compensation for counsel. 2009 Opinion, 33 Op. O.L.C. at 404. Relying on the "familiar *Chevron* framework," *id.* at 411, we not only suggested that the term "competent" is "plainly a generality open to varying constructions" but also "presume[d] that the Attorney General has discretion to resolve statutory ambiguities." *Id.* at 408. We then advised that the statute "may reasonably be construed" to permit the Attorney General to set independent competency standards, including evaluations of attorney compensation. *Id.* at 404, 419.

Our 2009 Opinion has a number of flaws. To begin, the 2009 Opinion thought it "fair to conclude from the text of subsection (a)(1)(A) *standing alone* that, by assigning to the Attorney General the obligation to determine whether a state has established a qualifying mechanism for appointing competent counsel, Congress intended the Attorney General to resolve the ambiguity and to provide a reasonable interpretation of the word 'competent.'" *Id.* at 408 (emphasis added). The opinion subsequently gave some consideration to the larger statutory context, but the weight of that consideration was minimal at best.

That is not how statutory interpretation works. Rather, it is a fundamental rule of statutory construction that a single subsection *never* stands alone. *See, e.g.*, *Pulsifer v. United States*, 144 S. Ct. 718, 735–36 (2024); *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 768–69 (2018). Subsections must be read in their full context—"text, statutory history, statutory structure, statutory punishments [(if any)], federalism, and fair notice." *Snyder v. United States*, 144 S. Ct. 1947, 1954 (2024). Our prior opinion neglected this fundamental rule.

Read in its larger context, it is difficult to reconcile section 2265(a)(1)(A) with any notion that the *Attorney General* is supposed to provide a nationwide standard for what constitutes competent representa-

tion in capital proceedings. To the contrary, neighboring subsection (a)(1)(C) directs the Attorney General to determine "whether *the State* provides standards of competency for the appointment of counsel in proceedings described in subparagraph (A)." 28 U.S.C. § 2265(a)(1)(C) (emphasis added). Section 2265's history also shows a consistent pattern of Congress attempting to prevent excessive federal interference with an otherwise lawful state judgment—including, for example, congressional rejection of an effort by the Judicial Conference to create a federal standard for competence. *See, e.g.*, 137 Cong. Rec. 27080 (1991) (remarks of Rep. Henry Hyde) (opposing a proposal that would have "impose[d] mandatory Federal standards for counsel in State capital trials" in a habeas reform proposal predating AEDPA); 73 Fed. Reg. at 75,331 (noting that "Congress did not accept" a recommendation from the Judicial Conference "that states be required to satisfy federally prescribed standards of counsel competency"); *Habeas Corpus Reform: Hearings on S. 88, S. 1757, and S. 1760 Before the S. Comm. on the Judiciary*, 101st Cong. at 1–4, 7, 18 (1989) (considering a proposal for habeas reform from a committee chaired by Justice Powell that opined "it is more consistent with the federal-state balance to give the States wide latitude" to establish "standards governing the competency of counsel").

Moreover, our 2009 Opinion did not even attempt to reconcile our related conclusion that the Attorney General may micromanage how states *compensate* the attorneys who will be held to this new nationwide competency standard with section 2265(a)(3)'s prohibition on requirements not "expressly stated in this chapter." 28 U.S.C. § 2265(a)(3). Indeed, we openly admitted that "there is no [statutory] language specifically authorizing the Attorney General to evaluate the adequacy of attorney compensation provided by a state's appointment mechanism." 2009 Opinion, 33 Op. O.L.C. at 420. To bridge the gap, we looked to American Bar Association guidelines, a statutory provision governing federal capital cases, and pre-2006 caselaw. *Id.* at 420–21. But none of these authorities is the relevant statute. "Absent persuasive indications to the contrary," our Office, like the courts, must "presume Congress says what it means and means what it says." *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016); *see also Expenditure of Appropriated Funds for Informational Video News Releases*, 28 Op. O.L.C. 109, 119 (2004). We see no such contrary indications in section 2265 to support the 2009 Opinion's reading.

In addition to these analytical infirmities, the legal background against which we issued the 2009 Opinion has dramatically changed. Since we issued that opinion, the Supreme Court has overruled *Chevron*, confirming that we must seek the "best meaning" of a statute and not merely a reasonable one. *Loper Bright*, 144 S. Ct. at 2266. This does not, of course, necessarily "cast doubt on our prior opinions" that rely on *Chevron*, since they "may still be the best reading of a statute." *Interpretation of "Federal Means-Tested Public Benefit" in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996*, 49 Op. O.L.C. __, at *6 n.2 (Dec. 16, 2025); *accord Loper Bright*, 144 S. Ct. at 2273 ("By [overruling *Chevron*], however, we do not call into question prior cases that relied on the *Chevron* framework."). It does, however, represent a sufficient change to the legal landscape to merit close reflection regarding whether our prior precedent should continue to bind the Executive Branch. *See, e.g.*, *Religious Liberty Protections for Federal Employees in Light of Recent Legal Developments*, 49 Op. O.L.C. __, at *6 (Sept. 18, 2025). And here, given the defects discussed above, our considered view in light of *Loper Bright* is that the 2009 Opinion can no longer be relied upon as a permissible reading of section 2265(a)(1).

### III.

Although we can no longer stand by our 2009 Opinion, we need not decide at this time on the best interpretation of 28 U.S.C. § 2265. We are well aware of the complex litigation and regulatory history that surrounds that section. Thus, although we rescind our 2009 Opinion, we do not, for "prudential reason[s]," decide today on the definitive meaning of section 2265. *See Whether Eluding Inspection Under 8 U.S.C. § 1325(a)(2) Is a Continuing Offense*, 49 Op. O.L.C. __, at *17 (June 21, 2025). Instead, we leave that question to a notice-and-comment rulemaking process that we understand to be underway already, and which offers a meaningful opportunity for public input that is impossible if this Office has given advice that is binding upon the Executive Branch. *Id.* (noting the "salutary" effect of such a cautious, step-wise approach).

LANORA C. PETTIT
*Deputy Assistant Attorney General*
*Office of Legal Counsel*